

I N  T H E

# Court of Appeals of Indiana

In the Matter of O.M., H.M., and As.M. (Minor Children), (Children in Need of Services), and Indiana Department of Child Services,

*Appellant-Petitioner*

v.

A.M. (Mother) and D.M. (Father),

*Appellees-Respondents*



FILED

Jul 30 2025, 9:10 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

---

July 30, 2025

Court of Appeals Case No.
25A-JC-1122

Appeal from the Perry Circuit Court

The Honorable Lucy Goffinet, Judge

Trial Court Cause Nos.
62C01-2408-JC-192, -193, -194

---

**Opinion by Judge Bailey**
Judges Brown and Weissmann concur.

**Bailey, Judge.**

## Case Summary

[1] The Indiana Department of Child Services ("DCS") appeals the trial court's dismissal of its petitions alleging that the three minor children of A.M. ("Mother") and D.M. ("Father") (collectively, "Parents") are Children in Need of Services ("CHINS"). DCS raises one issue for our review, namely, whether the trial court erred when it dismissed its petitions. We reverse and remand for further proceedings.

## Facts and Procedural History

[2] Parents have three minor Children: O.M., born February 17, 2021; H.M., born August 23, 2022, and As.M., born April 1, 2024. On August 16, 2024, As.M. sustained a "significant spiral fracture" to his arm, which was neither "consistent with the story" Parents told healthcare providers nor "a typical injury for a 4[-]month[-]old baby." Appellant's App. Vol. 2 at 15. That same day, DCS received a report that As.M. had been the victim of abuse.

[3] Healthcare providers found As.M.'s injury to be "worrisome" and transferred him to Norton Children's Hospital ("the Hospital") for further evaluation, including a "full skeletal survey and CT scan." *Id*. The results demonstrated that As.M. had also sustained two tibia fractures, one in each leg, which was consistent with "someone shaking the baby with force." *Id*. Doctors determined that the injuries were not accidental.

[4]     On August 19, DCS filed its petitions alleging that As.M. was a CHINS due to allegations of abuse and that H.M. and O.M. were CHINS due to allegations of neglect. On August 20, the court held its initial hearing during which Parents entered a denial. The next day, the court entered its orders authorizing DCS to take custody of the Children. On September 3, the court held a status hearing and scheduled the fact-finding hearing for October 8.

[5]     On October 2, DCS filed a motion to convert the October 8 fact-finding hearing to a status hearing. In support of its motion, DCS alleged that it was "waiting on additional records from First Steps," that "there are additional interviews that need to be conducted," and that the "records are voluminous[.]" *Id*. at 69. As such, DCS alleged that it had shown "[g]ood cause" to convert the hearing. *Id*. Parents objected to the continuance. The court found that "good cause has been shown by" DCS and granted DCS's motion. *Id*. at 71. The court rescheduled the fact-finding hearing for December 12.

[6]     On November 14, DCS issued a subpoena to Dr. Melissa Currie, a Pediatric Protection Specialist at the Hospital who had evaluated As.M.'s medical records. On November 22, DCS filed a motion to continue the December 12 fact-finding hearing. In its motion, DCS alleged that Dr. Currie was an "indispensable witness" who was "unavailable to testify" at the December 12 hearing. *Id*. at 75. DCS provided a list of dates that Dr. Currie would be available and requested that the court reschedule the fact-finding hearing for one of those dates. The court found "good cause" to continue the hearing and rescheduled it for March 13, 2025, which is one of the dates Dr. Currie had

provided. *Id*. at 77. DCS reissued the subpoena for the new date and requested that Dr. Currie be permitted to testify telephonically, which motion the trial court granted.

[7] On February 19, 2025, Parents' attorney withdrew his appearance, and, on February 21, Parents' new counsel filed his appearance. On March 7, Parents filed a motion to continue the fact-finding hearing in order to allow their new attorney more time to review the "volume of discovery" in light of "other previously scheduled professional commitments[.]" *Id*. at 106. The court granted Parents' motion over DCS's objection. DCS then requested a date in June when Dr. Currie would next be available. The court rescheduled the hearing for April 22 and 29.

[8] On March 17, DCS issued a notice that it intended to take Dr. Currie's deposition on April 21. Dr. Currie completed her report on April 19 and provided it to DCS on April 20. On April 21, DCS provided a copy to Parents, and the parties deposed Dr. Currie. That same day, Parents filed a motion to dismiss DCS's CHINS petitions. Parents asserted that the court was "required to dismiss" the petitions because "the fact-finding hearing has not been held timely" as required by Indiana Code Section 31-34-11-1, which places a deadline for the court to hold a fact-finding hearing, and because "material misrepresentations have been made by" DCS. *Id*. at 136. Specifically, Parents alleged that more than 120 days had elapsed without a hearing since DCS filed

its petition and that DCS had "made material misrepresentations of fact" because "its real reason for delaying the fact-finding hearing was due to its 'expert' not being prepared to testify." *Id*.

[9] At a hearing on Parents' motion, Parents argued that, while the December 12 hearing was "within the time period," the subsequently scheduled hearing was "outside the 120 days." Tr. Vol. 2 at 40. And Parents asserted that the case was "old" and that "276 days" had passed without a hearing. *Id*. at 41. At the conclusion of the hearing, the court found that there had been several continuances because of the "material witness" and that the case had been "drug [sic] out[.]" *Id*. at 53. The court further found: "What we have done, in my opinion, is violated the statute." *Id*. As such, the court granted Parents' motion to dismiss. DCS then orally requested permission to retake emergency custody of the Children and to refile its petitions, and Parents objected.[1] Then,

---

[1] It is not clear whether the court ruled on DCS's request at the hearing. After both DCS and Parents presented their arguments, the following colloquy occurred:

> THE COURT: Well, then why wasn't [Dr. Currie] available?
>
> [DCS]: She's unavailable—
>
> THE COURT: But no. She's - - all of these times, she's unavailable? No.
>
> [DCS]: She was not unavailable - -
>
> THE COURT: I'll show it - -
>
> [DCS]: - - on March 13th.
>
> THE COURT: Thank you.
>
> THE COURT REPORTED: Recording excerpted.
>
> (Proceedings adjourned at 9:34 a.m.).

Tr. Vol. 2 at 55.

in written orders, the court dismissed DCS's CHINS petitions with prejudice. This appeal ensued.

## Discussion and Decision

[10] DCS contends that the trial court erred when it dismissed DCS's CHINS petitions. Indiana Code Section 31-34-11-1(a) (2024)[2] provides that, unless the allegations of a petition have been admitted, the juvenile court "shall complete a fact[-]finding hearing not more than sixty (60) days after" the CHINS petition is filed. But the juvenile court "may extend the time to complete a fact[-]finding hearing . . . for an additional sixty (60) days if all parties in the action consent to the additional time." Ind. Code § 31-34-11-1(b) (2024). If the fact-finding hearing is not held within the time set forth in the statute, "upon a motion with the court, the court shall dismiss the case without prejudice." I.C. § 31-34-11-1(d).[3]

---

[2] The Indiana General Assembly amended Indiana Code Section 31-34-11-1, effective July 1, 2025. We refer to the version of the statute that was in effect at the time DCS filed its petitions.

[3] Both parties assert that we review motions to dismiss for an abuse of discretion and cite *A.C. v. Ind. Dep't of Child Servs. (Matter of M.S.)*, 140 N.E.3d 279, 285 (Ind. 2020). *See* Appellant's Br. at 16, Appellees' Br. at 16. However, *Matter of M.S.* states that courts "are afforded considerable discretion in ruling on motions for continuances, including determining whether the moving parties have shown good cause for requesting a continuance." 140 N.E.3d at 285. The Court then found that, because the trial court had not abused its discretion in granting a continuance, "the trial court did not err in denying Mother's motion to dismiss." *Id*. As such, we will review the court's decision for clear error, not an abuse of discretion.

[11] Here, the trial court dismissed the CHINS petitions as untimely.[4] There is no dispute that the trial court did not complete a fact-finding hearing within the timeline provided by the statute. Indeed, DCS filed its CHINS petitions on August 19, 2024, and the court had still not completed a fact-finding hearing when Parents filed their motion to dismiss 246 days later on April 21, 2025, which was well beyond the 120-day deadline.

[12] However, our Supreme Court has held that "the 120-day deadline contemplated by subsection 31-34-11-1(b) may be enlarged if a party shows good cause for a continuance." *A.C. v. Ind. Dep't of Child Servs. (Matter of M.S.)*, 140 N.E.3d 279, 285 (Ind. 2020). The Court explained its reasoning as follows:

> Allowing a "good cause" continuance beyond the 120-day deadline not only provides fairness for the parties involved but also allows the legislature's intent to prevail over the strict literal meaning of any word or term. We have consistently observed the principle that the purpose of a CHINS adjudication is to protect children, not punish parents. Accordingly, trial courts are afforded considerable discretion in ruling on motions for continuances, including determining whether the moving parties have shown good cause for requesting a continuance. There are no "mechanical tests" for determining whether a request for a

---

[4] Parents contend that the trial court additionally dismissed the petitions for reasons beyond a violation of Indiana Code Section 31-34-11-1, namely, because DCS had "violat[ed] the [P]arents' and [C]hildren's rights to due process, DCS discovery violations and misrepresentations[,] and failure to subpoena witnesses[.]" Appellees' Br. at 21. While Parents made references to "material misrepresentations" by DCS in its motion to dismiss, Appellant's App. Vol. 2 at 136, and to a violation of Parents' "due process rights" at the hearing on their motion, Tr. Vol. 2 at 41, the trial court did not make any finding on those alleged issues. Rather, the court found that several continuances had been filed, that the case had been "drug [sic] out," and that the result was that DCS "violated the statute." *Id.* at 53. Thus, it is clear that the court dismissed the case solely because there had not been a timely hearing on DCS's petitions as required by the statute.

continuance was made for good cause. Rather, the decision to grant or deny a continuance turns on the circumstances present in a particular case and the circumstances of this particular case justified the trial court's decision.

*Id*. at 284-85 (citation modified).

[13] Here, the court initially scheduled the fact-finding hearing for October 8, 2024. DCS filed a motion to continue because it was "waiting on additional records from First Steps," there were "additional interviews that needed to be conducted," and the "records are voluminous[.]" Appellant's App. Vol. 2 at 69. The court specifically found "that good cause has been shown" by DCS and granted the motion, which we cannot say was an abuse of discretion. *Id*. at 71. The court rescheduled the fact-finding hearing for December 12.

[14] DCS then filed a second motion to continue when its "indispensable witness," Dr. Currie, was unavailable to testify at the December 12 hearing. *Id*. at 75. The court again found "good cause" to continue the hearing and granted DCS's motion. *Id*. at 77. Again, we cannot say that it was an abuse of discretion to continue the hearing to a date when the expert would be available. The court rescheduled the hearing for March 13, 2025, which was a date that Dr. Currie

had previously indicated that she would be available to testify.[5]

However, after Parents hired new counsel on February 21, Parents filed a motion to continue the March 13 fact-finding hearing to allow the new attorney to review "the volume of discovery" and because of "other previously scheduled professional commitments" that would prohibit him from "adequately prepar[ing] for the hearing." *Id.* at 106. While the court did not make an explicit finding, it implicitly found that Parents had shown good cause when they requested additional time to review the discovery. *See Matter of M.S.*, 140 N.E.3d at 285 (finding that the mother had shown good cause when she requested additional time to resolve a discovery dispute and to go through the large amount of video evidence).

Stated differently, the trial court found good cause to grant all three motions to continue. Nonetheless, when Parents filed their motion to dismiss, the court to the contrary found that the continuances had "drug [sic] out" the case and "violated the statute." Tr. Vol. 2 at 53.

But as the court previously found, the continuances filed by both DCS and Parents were for good cause. And, while "we are mindful of the importance of

---

[5] At the time DCS filed both of its motions to continue, Trial Rule 53.5 provided that, "[u]pon motion, trial may be postponed or continued in the discretion of the court, and shall be allowed upon a showing of good cause[.]" That rule was repealed effective January 1, 2025. Motions to continue are now addressed in Trial Rule 7. Parents contend that, because Trial Rule 53.5 was repealed, the trial court was automatically required to dismiss the case. However, Parents have not cited any authority to demonstrate that the court was required to dismiss a case after it had previously, and properly, granted two motions to continue when that rule was in full effect.

the statutory deadline," the facts of this case "justif[ied]" the trial court's grant of the three motions and continuing the case beyond the prescribed timeframe. *Matter of M.S.*, 140 N.E.3d at 285. Because the parties showed good cause for the continuances and the court did not abuse its discretion when it granted those motions, the court erred when it granted Parents' motion to dismiss.[6]

## Conclusion

[18] The trial court erred when it granted Parents' motion to dismiss.[7] We therefore reverse the trial court's order and remand for further proceedings.

[19] Reversed and remanded.

Brown, J., and Weissmann, J., concur.

---

[6] Parents contend that the fact-finding hearings scheduled for April 22 and April 29 "were not going to be completed . . . even if the juvenile court held hearings" because Dr. Currie was unavailable to testify. Appellees' Br. at 23. However, we cannot speculate as to what may or may not have happened had Parents not filed their motion to dismiss.

[7] Because we reverse the court's order dismissing DCS's petitions, we need not address DCS's contention that the court abused its discretion when it dismissed the petitions with prejudice.

ATTORNEYS FOR APPELLANT

Theodore E. Rokita
Indiana Attorney General

Robert M. Yoke
Deputy Attorney General
Indianapolis, Indiana


ATTORNEY FOR APPELLEES

Walter R. Hagedorn II
Tell City, Indiana